UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SREAM, INC.,

                                   Plaintiff,                    15cv2904 (WHP) (DF)

          -against-                                             **REPORT AND
                                                                 RECOMMENDATION**
752 TOBACCO CANDY INC.,

                                   Defendant.

**TO THE HONORABLE WILLIAM H. PAULEY III, U.S.D.J.:**

          This trademark infringement and counterfeiting case is currently before this Court for a

damages inquest following a default judgment entered in favor of plaintiff Sream, Inc. ("Sream"

or "Plaintiff") against defendant 752 Tobacco Candy Inc. ("Defendant").  (*See* Dkt. 33 (Default

Judgment); 34 (Order of Reference for Damages Inquest).)[1]  For the reasons set forth below, I

recommend that Plaintiff be awarded $30,000 in statutory damages and $400 in costs.  I also

recommend that the Court grant Plaintiff's request that the Court's permanent injunction, as set

forth in the Default Judgment (Dkt. 33), be included in any final judgment in this case.  Finally, I

recommend that, upon entry of an order concerning damages, Plaintiff be granted 30 days' leave

to substantiate its request for additional costs and attorneys' fees.

<u>**BACKGROUND**</u>

          Earlier this year, this Court issued a lengthy report and recommendation concerning

damages in another case brought in this Court by Sream, involving the same trademarks, the

same type of alleged conduct (albeit by a different defendant), the same type of counterfeit

---

[1] Plaintiff originally named additional defendants Funky Town, Ltd. and Village Pop
NYC Inc. (*see* Complaint, dated Apr. 14, 2015 ("Compl.") (Dkt. 1)), but, by Order of the Court
dated May 6, 2016, this action was discontinued as against those defendants after it was reported
to the Court that they had settled with Plaintiff (Dkt. 35).

products, and the same type of legal claims. *See Sream, Inc. v. Khan Gift Shop, Inc.*, No. 15cv2091 (KMW) (DF) (the "*Khan* Action"), 2016 WL 1130610 (S.D.N.Y. Feb. 23, 2016), *report and recommendation adopted by* 2016 WL 1169517 (Mar. 22, 2016). The Complaint, Proposed Findings of Fact and Conclusions of Law concerning damages, and attorney Affirmation filed by Plaintiff in that case are practically identical to the equivalent filings in this case, with the exception of defendant names, pre-complaint investigation dates, and the price and quantity of infringing products. (*Compare* Dkts. 1, 37, 38 *with* Case No. 15cv2091, Dkts. 1, 16, 17.) Rather than again describing the background to Plaintiff's ownership of the claimed trademarks and their commercial value, this Court will incorporates by reference that portion of its prior report and recommendation in the *Khan* Action that sets out that background. Similarly, this report will provide a shorter summary of the applicable law, as the legal framework applicable here is the same as that previously addressed. For ease of reference, a copy of this Court's prior report and recommendation in the *Khan* Action is attached hereto. It can also be found on the public Docket of this Court, at Dkt. 19, in Case No. 15cv2091.

A.   **Factual Background**

In brief, Plaintiff, the exclusive licensee of the federally registered "RooR" trademark in the United States, alleges that Defendant, the operator of a retail smoke shop in Manhattan, imported, manufactured, and/or sold counterfeit "RooR" water pipes, without Plaintiff's consent, license, or approval, in violation of the federal Lanham Act and New York state law. (*See generally* Compl.) To support its allegations, Plaintiff attached to its Complaint a report from an investigator, dated January 16, 2015, describing how the investigator was able to purchase a counterfeit RooR water pipe from Defendant at its Manhattan store. (Compl., Ex. C (Dkt. 1-3).) The investigator's report states that he entered Defendant's store at 752 Ninth Avenue, New

York, New York 10019 on January 14, 2015; that he observed on display, for sale, "approximately three glass pipes" bearing the RooR mark, two of which he asked to examine; that, upon examination, he determined that the two pipes were counterfeit; and that he purchased one of the pipes for $48.60.  (*Id.*)  The investigator attached to his report photographs of the following:  the two pipes that he examined, one of which is larger and contains different colors than the other; the salesman who assisted him; the inside and outside of the store; and the receipt from his purchase.  (*Id.*)  Although this is not entirely clear, it appears from the supplied photographs that the investigator likely purchased the larger of the two pipes he was shown. (*See id.*)

### B.   Procedural History

Plaintiff filed its Complaint in this action on April 15, 2015 (*see* Dkt. 1), asserting Lanham Act claims against Defendant for trademark infringement, counterfeiting, and false designation of origin, and New York state-law claims for trademark dilution, unlawful deceptive acts and practices, and unfair competition (*see generally* Compl.).  In its Complaint, Plaintiff sought damages, injunctive relief, costs, and attorneys' fees.  (*See id.*, at 19-22.)  Plaintiff served the Summons and Complaint on Defendant on April 17, 2015.  (Dkt. 4.)  Defendant, however, never moved, answered, or otherwise responded to the Complaint.  (*See generally* Dkt.)  Plaintiff therefore filed a Request for Entry of Default against Defendant on June 11, 2015.  (Dkt. 8.)  The Clerk of Court issued a Certificate of Default the same day.  (Dkt. 9.)

On April 21, 2016, Plaintiff served and filed a motion for default judgment against Defendant.  (*See* Dkts. 30, 32-6.)  After Defendant failed to respond, the Court granted Plaintiff's motion on May 6, 2016.  (Dkt. 33).  In addition to awarding a default judgment against Defendant in Plaintiff's favor on each and every claim set forth in the Complaint, the Court

enjoined Defendant "from further sale, distribution or advertising of the counterfeit products described in the Complaint," and required Defendant to "destroy any such counterfeit items." (*Id.*)

After the matter was referred to this Court for a report and recommendation, this Court issued a Scheduling Order, directing Plaintiff to serve and file Proposed Findings of Fact and Conclusions of Law concerning damages no later than June 13, 2016, and directing Defendant to file any opposition by July 13, 2016. (Dkt. 36.) This Court specifically cautioned Defendant that, if it failed to respond to Plaintiff's submission or request an in-court hearing by July 13, 2016, this Court would issue a Report and Recommendation concerning damages on the basis of Plaintiff's written submissions alone. (*Id.*) Plaintiff timely filed its Proposed Findings on June 13, 2016 (*see* Plaintiff's Proposed Findings of Fact and Conclusion of Law, dated June 13, 2016 ("Proposed Findings") (Dkt. 37); Affirmation of Robert L. Greener, Esq., dated June 13, 2016 ("Greener Aff.") (Dkt. 38) and exhibits attached thereto), but Defendant did not respond or otherwise contact this Court.

In its Proposed Findings, Plaintiff requests a minimum of $10,000 in statutory damages per counterfeit water pipe found at Defendant's store. (Proposed Findings (Section re "Statutory Damages") ¶ 6.) Plaintiff's investigator's report, filed with the Complaint (*see* Compl., Ex. C), and resubmitted with the Proposed Findings (*see* Greener Aff., Ex. 2 (Dkt. 38-2)), states that the investigator found "approximately three" counterfeit water pipes for sale at Defendant's store (*id.*), implying a requested damages amount of $30,000. Plaintiff also requests costs of $400 for the Court's filing fee, and $200 for service-of-process costs (Proposed Findings (Section re "Statutory Damages") ¶ 6), although Plaintiff has not substantiated its request for service-of-

process costs.  As to attorneys' fees, Plaintiff asserts that it will provide a separate fee application within 30 days of the filing of "the report granting damages."  (*Id.* ¶ 7.)

## DISCUSSION

### I.    APPLICABLE LEGAL STANDARDS

Of particular relevance here, the Lanham Act provides for statutory damages for counterfeiting in the amount of:

> (1)    not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2)    if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed as the court considers just.

11 U.S.C. § 1117(c).  Neither of these provisions provides any specific criteria for determining the amount of statutory damages that may be awarded, but, instead, each simply authorizes such awards "as the court considers just," thereby affording the courts "broad discretion" to determine the amount of damages appropriate to achieve the Lanham Act's dual goals of compensation and deterrence.  *See Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).  To achieve the goals of compensation and deterrence when the defendant's profits and the plaintiff's losses are difficult to determine directly, courts in this Circuit have identified seven relevant factors, borrowed from copyright law, to consider in assessing trademark damages:

> (1) 'the expenses saved and the profits reaped' by the defendant infringer; (2) 'the revenues lost by the plaintiff'; (3) 'the value of the copyright'; (4) 'the deterrent effect on others besides the defendant'; (5) 'whether the defendant's conduct was innocent or willful'; (6) 'whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced'; and (7) 'the potential for discouraging the defendant.'

*Coach, Inc. v. O'Brien*, No. 10cv6071 (JPO) (JLC), 2012 WL 1255276, at *2 (S.D.N.Y. Apr. 13, 2012) (adopting report and recommendation in part and quoting *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986)); *Sara Lee*, 36 F. Supp. 2d at 166. Ultimately, the Court must, in its discretion, award damages that are sufficient to compensate the plaintiff and deter further unlawful activity by the defendant and others, without affording the plaintiff an unjustified windfall. *See, e.g.*, *Coach, Inc.*, 2012 WL 1255276, at *5; *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2011). Further, "[a]lthough statutory damages need not match actual damages, courts generally hold that 'statutory damages should bear some relation to actual damages suffered.'" *Coach, Inc.*, 2012 WL 1255276, at *2 (quoting *Yurman Studio, Inc. v. Castaneda,* Nos. 07cv1241, 07cv7862, 2008 WL 4949775, at *2 (S.D.N.Y. Nov. 19, 2008)); *see also New Line Cinema Corp. v. Russ Berrie & Co.,* 161 F. Supp. 2d 293, 303 (S.D.N.Y. 2001); *Sara Lee*, 36 F. Supp. at 166-67.

## II.   PLAINTIFF'S DAMAGES

Plaintiff has elected to seek statutory damages in lieu of actual damages – a permissible election under the law. *See, e.g.*, *Tiffany (NJ) LLC v. Dong*, No. 11cv2183 (GBD) (FM), 2013 WL 4046380, at *4 (S.D.N.Y. Aug. 9, 2013) (report and recommendation noting that a trademark owner may choose to recover either actual or statutory damages). In particular, Plaintiff is apparently asking that the Court award it $30,000 in statutory damages against Defendant, calculated as $10,000 for each of the three counterfeit RooR water pipes that Plaintiff's investigator observed in Defendant's store. (*See* Proposed Findings (Section re "Statutory Damages") ¶ 6.) According to Plaintiff, this amount would constitute an appropriate award in light of factors relevant to a statutory-damages analysis, particularly Defendant's lack

of cooperation, its willfulness in selling products that, according to Plaintiff, Defendant must have known were counterfeit, and the need to deter other counterfeiters in the market.  (*Id.* ¶ 8.)

As it explained in its report and recommendation in the *Khan* Action (*see* attached, at 16-17), this Court notes that, on its face, the Lanham Act does not suggest that statutory damages may be calculated as Plaintiff would calculate them here, *i.e.*, selecting a base amount, and then multiplying that amount by the number of each falsely branded *item* found to have been sold or offered for sale by a defendant.  Rather, the statute, as quoted above, states that statutory damages may be awarded in the range of $1,000 to $200,000 (and, where the counterfeiting was "willful," up to $2 million) "*per counterfeit mark per type of goods* or services sold, offered for sale, or distributed."  15 U.S.C. § 1117(c) (emphasis added).

As in the *Khan* Action, Plaintiff has only demonstrated here that Defendant sold one type of product – water pipes – branded with one of the RooR trademarks at issue.  Although the investigator's report suggests that Defendant sold water pipes in at least two separate sizes and colors (*see* Compl., Ex. C), this Court, as in the *Khan* Action, is unable to conclude, from the information provided, whether those pipes should somehow be considered different "types" of goods.  Thus, this Court must evaluate the relevant factors and case law to determine a reasonable amount of statutory damages to be awarded against Defendant, based on the use of a single RooR trademark, on a single type of product.

First, this Court notes that, "by virtue of [its] default," Defendant "[is] deemed to be [a] willful infringer[ ]."  *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *3 (S.D.N.Y. Dec. 3, 2013), *report and recommendation adopted*, 2014 WL 1338065 (Apr. 3, 2014) (collecting cases).  Thus, although the allegations in Plaintiff's Complaint regarding the knowing or reckless nature of Defendant's conduct are largely

conclusory,[2] an award of statutory damages under Section 1117(c)(2) would nonetheless be appropriate in this case.  *See id*.

Accordingly, this Court turns to the various factors set out above (*see* Discussion *supra*, at Section I), to determine a reasonable statutory-damages award.  As to the first three factors – the profits reaped by Defendant due to its counterfeiting, the revenues lost by Plaintiff, and the value of the trademarks at issue – this Court notes that Plaintiff has touted, in its Complaint, the supposed high value of the RooR trademarks, and the great extent of Defendant's supposed gain, at Plaintiff's expense.  (*See, e.g.*, Compl. ¶ 15.)  Plaintiff's suggestion, though, that Defendant may have benefited greatly from its conduct is not well supported by the evidence submitted on this damages inquest, as Plaintiff has only shown that Defendant, at one point in time, had "approximately three" RooR-branded water pipes for sale.  (Dkt. 1-3.)  Further, the price paid by the investigator of $48.60 is not, without greater context, suggestive of the fact that Defendant was setting itself up to earn "*significant* illegitimate profits" or "*substantial* ill-gotten gains" from the deliberate counterfeiting of Plaintiff's trademarks.  (Compl. ¶ 15 (emphases added).)  Assuming that the two other counterfeit RooR water pipes observed by the investigator were similarly priced, then, even if Defendant had sold all of the counterfeit RooR merchandise that it had on display, Defendant would have made less than $150 ($48.60 x 3) in revenue, and therefore, a lesser amount in profit.  Indeed, this figure may overstate the ceiling for profits at issue because the photographs submitted with the investigator's report suggest that he likely purchased the larger (and thus potentially more expensive) of the available water pipes for

---

[2] *See, e.g.*, Compl. ¶ 38 (alleging that "[e]ach of the Defendant['s] actions complained of herein were intentional, willful, and malicious with a deliberate intent to trade on the goodwill associated with the federally registered RooR Marks"); *see also* Proposed Findings § III, ¶ 4 (reciting the same).

$48.60.  This low ceiling for Defendant's apparent profits exerts some downward pressure on the amount of statutory damages that should be awarded here.

Each of the remaining factors, however – including the willfulness of Defendant's conduct, Defendant's lack of cooperation in providing discovery, and the potential for discouraging the Defendant and others – weighs in favor of granting Plaintiff an award that would be higher than Plaintiff's actual damages.  Moreover, courts in this District regularly find that "a significant award [is] necessary to deter the defendant and others from infringing the marks."  *Coach, Inc*., 2012 WL 1255276, at *2; *see also Lane Crawford LLC*, 2013 WL 6481354, at *3 ("As to the fourth factor, the goal of deterring similar conduct by other enterprises requires a substantial award." (internal quotation marks and citations omitted; collecting cases)).  Even so, as noted above, Plaintiff "should not reap a windfall multi-million dollar award from the actions of a single small-scale infringer," *Coach, Inc*. 2012 WL 1255276, at *2, and, the statutory damages awarded should "bear some relation to actual damages suffered," *id*. (quoting *Yurman Studio, Inc*., 2008 WL 4949775, at *2).

Based on nearly the same analysis in the *Khan* Action, this Court recommended that Plaintiff be awarded $50,000 in statutory damages against each infringing defendant that defaulted in that case.  Here, though, as noted above, Plaintiff has only sought $30,000 in damages, and a defendant that has chosen not to contest the amount of damages sought in a damages inquest should not then face a judgment for more than the requested amount.  Furthermore, while a "per item" measure of statutory damages is not contemplated by the Lanham Act, it is still worth noting that the investigator in this case did observe fewer counterfeit pipes for sale than had been observed in the *Khan* Action.  (*See* attached report and

recommendation, at 4 (noting that investigator observed 15 counterfeit RooR pipes in one defendant's store, and 12 in another).)

Under the circumstances presented here, and having considered and balanced all of the relevant factors, this Court recommends awarding Plaintiff damages in the requested amount of $30,000 as against Defendant – an amount that is well in excess of the profits that Defendant apparently reaped, but which acknowledges Defendant's willful conduct and the importance of deterring potential future infringers, and which would be in line with amounts awarded in similar cases, including the *Khan* Action.  *See Sream, Inc.*, 2016 WL 1169517, at *1 (adopting report and recommendation); *see also, e.g., Coach, Inc*. 2012 WL 1255276, at *2; *All-Star Mktg. Grp., LLC*, 775 F. Supp. 2d at 625; *Church & Dwight Co. v. Kaloti Enters. of Michigan, L.L.C.*, 697 F. Supp. 2d 287, 295 (E.D.N.Y. 2009).  This Court considers this award to be "just" pursuant to 15 U.S.C. § 1117(c).

## III.   OTHER REQUESTED RELIEF

### A.   Costs

15 U.S.C. § 1117(a) provides that a plaintiff who establishes trademark infringement may recover the costs that it incurred in the action.  Costs that may be appropriate for reimbursement include filing fees, process-server fees, copying costs, and other administrative costs.  *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987).

In this case, Plaintiff seeks recovery for only two types of costs:  (1) the filing fee of $400.00, and (2) the cost of service of process upon Defendant, alleged to be $200.00.  (Greener Aff. ¶ 28; Proposed Findings (Section re "Statutory Damages") ¶ 6.)  Although the Court may take judicial notice of its own filing fee, Plaintiff must substantiate its service-of-process costs, *see Lee v. Santiago*, No. 12cv2558 (PAE) (DF), 2013 WL 4830951, at *5, 14 (S.D.N.Y. Sept. 10,

10

2013) (adopting report and recommendation), and it has not done so here.  Accordingly, I recommend that the Court award Plaintiff $400 in costs.

## B.   __Attorneys' Fees__

Attorneys' fees are available where the Court awards statutory damages under Section 1117(c), provided the Court finds the case to be "exceptional," as where there is evidence of fraud or bad faith, or where the defendant is found to have acted willfully.  *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

Here, given Defendant's default, which, as discussed above, leads this Court to conclude that it has acted willfully (*see* Discussion *supra*, at Section II(A)) – an award of attorneys' fees would be appropriate.  Rather than support its request for attorneys' fees with contemporaneous time records and other appropriate documentation, however, Plaintiff simply states that it plans to provide the Court with a separate attorneys' fees application 30 days after "the report granting damages" is filed.  (Proposed Findings (Section re "Statutory Damages") ¶ 6.)  Plaintiff has not cited any authority, under 15 U.S.C. § 1117 or otherwise, for bifurcating the inquest phase in this manner.  Nor is Plaintiff's statement clear as to when it intends to file it attorneys' fees application given that this "report" can only recommend, rather than "grant," damages.

Nonetheless, this Court recommends that Plaintiff be granted leave to file a fee application within 30 days of Judge Pauley's issuance of an order concerning damages, and that Defendant be given 14 days to oppose Plaintiff's application.  *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 672 (S.D.N.Y. 2011) (adopting report and recommendation and granting the plaintiffs' request that they be given "thirty days following entry of an order on damages in which to pursue attorney's fees").  Any fee application by Plaintiff should demonstrate that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897

(1984), and provide the Court with sufficient information to assess the fee application, *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

    **C.**    **Injunctive Relief**

    As noted, the Court's Default Judgment provided that Defendant "is enjoined from further sale, distribution or advertising of the counterfeit products described in the Complaint, and required to destroy such counterfeit items."  (Dkt. 33.)  Plaintiff requests that the same injunctive relief be included, as permanent relief, in any final judgment issued by the Court that includes a damages award.  (*See* Greener Aff. ¶ 28; Proposed Findings (Section re "Statutory Damages") ¶ 6.)[3]  The requested permanent injunction would be appropriate on the facts presented here, and I therefore recommend that any final judgment issued in Plaintiff's favor against Defendant in this case include the same injunctive relief that was previously set out in the Default Judgment.

<u>CONCLUSION</u>

    For all of the foregoing reasons, this Court recommends that Plaintiff be awarded statutory damages against Defendant in the amount of $30,000 and costs in the amount of $400. This Court also recommends that, consistent with Plaintiff's request, the permanent injunction set forth in the Default Judgment (Dkt. 33) be included in any final judgment issued in this case. Finally, this Court recommends that Plaintiff be given 30 days from the entry of any order granting Plaintiff damages to submit an application for its reasonable attorneys' fees, and that Defendant be given 14 days to oppose such an application.

    Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

---

[3] The Greener Affirmation contains two paragraphs labeled "28."  The paragraph addressing injunctive relief is the second paragraph 28.

objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).
Such objections, and any responses to objections, shall be filed with the Clerk of Court, with
courtesy copies delivered to the chambers of the Honorable William H. Pauley III, United States
Courthouse, 500 Pearl Street, New York, New York 10007, Room 1920, and to the chambers of
the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York
10007. Any requests for an extension of time for filing objections must be directed to
Judge Pauley. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL
RESULT IN A WAIVER OF OBEJCTIONS AND WILL PRECULDE APPELLATE REVIEW.
*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d
1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.
Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d
Cir. 1983).

Dated:  New York, New York
       October 11, 2016

                                 Respectfully submitted,

                                 DEBRA FREEMAN
                                 United States Magistrate Judge

Copies to:

Plaintiff's counsel (via ECF)

752 TOBACCO CANDY INC.
752 9th Avenue
New York, NY 10019

# ATTACHMENT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────────────

SREAM, INC.,

                                    Plaintiff,

              -against-

KHAN GIFT SHOP, INC., *a/k/a* KHAN & KHAN
GIFT SHOP; WEST FORCE USA INC., *a/k/a*
TATTOO AND BODY PIERCING STUDIO; and
DOES 1-10, *inclusive*,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

15cv02091 (KMW) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE KIMBA M. WOOD, U.S.D.J.:**

This trademark infringement and counterfeiting case is currently before this Court for a

report and recommendation on the motion by plaintiff Sream, Inc. ("Plaintiff") for a default

judgment against defendants Khan Gift Shop, Inc., also known as Khan & Khan Gift Shop

("Khan"), and West Force USA Inc., also known as Tattoo and Body Piercing Studio ("West

Force") (collectively, "Defendants").[1]  (*See* Dkts. 12 (Motion for Default Judgment), 14 (Order

of Reference for Damages Inquest).)  For the reasons set forth below, I recommend that

Plaintiff's motion for a default judgment be granted, and that, on that judgment, Plaintiff be

awarded $50,000 in statutory damages as against each of the two Defendants, for a total

judgment of $100,000.  I further recommend that the judgment enjoin Defendants from

continuing to sell, or to offer for sale, products branded with the counterfeit marks at issue in this

───────────────

[1] Plaintiff originally named an additional defendant in this action, Smoking Kulture NYC
Inc., a/k/a Kulture ("Kulture") (*see* Complaint for Trademark Counterfeiting, Trademark
Infringement, False Designation of Origin and Dilution and Unfair Competition, dated Mar. 19,
2015 ("Complaint" or "Compl.") (Dkt. 1)), but, by Stipulation and Order filed July 9, 2015
(Dkt. 9), Plaintiff's claims were voluntarily dismissed against that additional defendant.

case, and that Plaintiff be directed to submit a proposed judgment containing such injunctive relief. Finally, I recommend that Plaintiff be denied its requested costs and attorneys' fees, based on the fact that Plaintiff has not submitted any documentation whatsoever to justify either request, but that, with respect to attorneys' fees, Plaintiff be granted a further opportunity to submit a fee application.

## BACKGROUND

### A.    Factual Background

As set out in Plaintiff's Complaint, Proposed Findings of Fact and Conclusions of Law, and supporting attorney Affirmation,[2] the events that gave rise to this action may be summarized as follows:

### 1.    Plaintiff and the "RooR" Trademarks

Plaintiff is a California corporation that, since at least 2011, has been the exclusive licensee of the "RooR" mark in the United States. (Compl. ¶¶ 5, 12, 13.) According to Plaintiff, the RooR mark gained recognition in connection with its use on smokers' products, including particular types of "ornate and innovative" water pipes, parts, and accessories, that have been designed and manufactured in Germany, "for nearly two decades," by Martin Birzle, d/b/a RooR. (*Id.* ¶¶ 10, 12.) Plaintiff represents that RooR "distinguished itself as the premiere manufacturer of glass water pipes because of the [c]ompany's unwavering use of quality materials and focus on scientific principles to facilitate a superior smoking experience" (*id.* ¶ 11); Plaintiff further asserts that, as a result of this "unyielding quest for quality and unsurpassed innovation," "RooR

---

[2] *See* Complaint; Plaintiff's Proposed Findings of Facts and Conclusions of Law, dated Nov. 12, 2015 ("Proposed Findings") (Dkt. 16); and Affirmation of Robert L. Greener, Esq., dated Nov. 12, 2016 ("Greener Aff.") (Dkt. 17-1), with exhibits thereto (Dkt. 17). Upon Defendants' default, the well-pleaded allegations of Plaintiff's Complaint are accepted to establish Defendants' liability. (*See* Discussion *infra*, at Section I(A).)

products have a significant following and appreciation amongst consumers in the United States" (*id*.).

RooR is the exclusive owner of certain federally registered trademarks – including the "RooR" word marks and logos bearing registration nos. 3,675,839; 2,307,176; and 2,235,638 (*see id*. ¶ 13 (including images of registered logos); *see also* Proposed Findings § II, ¶ 2) – and certain common law trademarks (*see id*.). Pursuant to the terms of its license agreement with RooR, Plaintiff, itself, has now manufactured water pipes under the RooR mark. (Compl. ¶ 12.) Plaintiff "also advertises, markets, and distributes water pipes, water pipe parts, and other smoker's articles in association with the RooR mark." (*Id*.) Plaintiff asserts that "[a]ll of these activities are made with RooR's consent and approval, and in accordance with RooR's strict policies." (*Id*.) Plaintiff claims that, due to RooR's "substantial" investment of "time, money, and effort," as well as Plaintiff's collaborative efforts, RooR and Plaintiff have developed "significant goodwill in the entire RooR product line," as well as customer awareness of the RooR trademarks. (*Id*. ¶ 13.)

Plaintiff states that not only consumers, but also industry professionals recognize the "superiority" of RooR products (*id*. ¶ 14), enabling retailers to charge higher prices for them than for equivalent products of lesser quality (*see id*.). According to Plaintiff, RooR products are targets of counterfeiters because of the products' higher sale value. (*Id*. ¶ 15.) Plaintiff asserts that, in order to protect the RooR trademarks, Plaintiff has been granted all enforcement rights to sue infringers for injunctive and monetary relief. (*Id*. ¶ 16.)

### 2.   <u>Defendants' Sales of Counterfeit RooR Products</u>

Both defendants Khan and West Force are alleged in the Complaint to be New York corporations, with principal places of business in Manhattan. (*Id*. ¶¶ 6, 8; *see also* Greener Aff.

3

¶ 4 (stating that both Defendants are "registered New York Corporations").)  Both companies are described as operating retail smoke shops.  (Compl. ¶¶ 6, 8; Greener Aff. ¶ 22.)  Plaintiff pleads that, without its consent, Defendants both offered for sale and sold within the United States, including within this District, goods that are not authentic (and that are inferior to) RooR products, labeled with "reproductions, counterfeits, copies and/or colorable imitations" of one or more of the RooR trademarks at issue in this case.  (Compl. ¶¶ 17, 18.)

To support this allegation, Plaintiff has attached to its Complaint (and has resubmitted with its Proposed Findings), two reports from an investigator, describing how the investigator was able to purchase counterfeit RooR products from both Defendants, from their stores in Manhattan.  (Compl., Exs. A (investigator report regarding Khan), C (investigator report regarding West Force); *see also* Greener Aff., Ex. A (Compl. with exhibits).)  With respect to defendant Khan, the investigator's report states that he entered Kahn's store at 3 Saint Marks Place on January 9, 2015; that he observed on display, for sale, approximately 15 glass pipes bearing a RooR logo that appeared to be counterfeit; and that he purchased one such RooR-branded glass pipe, approximately 8 ¼ inches in size, for $32.66.  (Compl. ¶ 19, Ex. A (including purchase receipt).)  With respect to West Force, the investigator's report states that he entered West Force's store at 2 Saint Marks Place on January 9, 2015; that he observed on display, for sale, approximately 12 glass pipes bearing a RooR logo that appeared to be counterfeit; and that he purchased one such RooR-branded pipe, approximately 4 inches in size, for $13.00.  (Compl. ¶ 23; Ex C (including purchase receipt).)  Plaintiff inspected both of these water pipes after their purchase, and determined that neither was authentic.  (Compl. ¶¶ 20, 24.)[3]

---

[3] Plaintiff does not disclose the price points at which legitimate RooR water pipes of the same size and type as those purchased by the investigator are typically sold in the market, but does assert that, because of the superiority of RooR products in general, consumers are "willing

According to Plaintiff, "Defendants have intentionally and knowingly directed payments for the counterfeit items to be made to themselves within this Judicial District" (*id.* ¶ 25); have "purposely derived direct benefits from their interstate commerce activities by targeting foreseeable purchasers in the State of New York" (*id.* ¶ 26); and have used "images and names confusingly similar or identical to the RooR mark to confuse customers and aid in the promotion and sales of [their] unauthorized and counterfeit product[s]" (*id.* ¶ 27).

### B.    Procedural History

Plaintiff filed its Complaint in this action on March 19, 2015 (*see* Dkt. 1), asserting federal Lanham Act claims against Defendants for trademark infringement, counterfeiting, and false designation of origin, and New York state-law claims for trademark dilution, unlawful deceptive acts and practices, and unfair competition (*see generally* Compl.).  In its Complaint, Plaintiff sought injunctive relief, damages, costs, and attorneys' fees.  (*See id.*, at 22, ¶ 8.)  With respect to damages, Plaintiff requested:

> [t]hat Defendant[s] account for and pay over to Plaintiff profits realized by Defendant[s] by reason of Defendant[s'] unlawful acts herein alleged and, that the amount of damages for infringement of Plaintiff's RooR/Sream Trademarks be increased by a sum of treble damages under 15 U.S.C. §§ 1117(b) and/or up to $2,000,000 per Defendants under the [Anticounterfeiting Protection Act[4]] not exceeding three times the amount thereof as provided by law.[5]

---

to pay higher prices" for them than for non-RooR products.  (*Id.* ¶ 14.)  The only example Plaintiff provides for this is that "a RooR-branded 45 cm water pipe retails for $300 or more, while a non-RooR product of equivalent size will usually sell for less than $100."  (*Id.*)  The Court notes that 45 centimeters equals nearly 18 inches, and that this price comparison is therefore not directly relevant to the products purchased by the investigator in this case.

[4] *See* n.6, *infra*.

[5] This Court notes that, by its repeated use of the singular "Defendant" in the last several pages of its Complaint, including throughout the entire "Wherefore" clause, and by referring not to the "RooR" trademarks that are at issue in this case, but rather to the "RooR/Sream Trademarks," Plaintiff's pleading gives the appearance of having been cut and pasted from

(*Id.*, at 21, ¶ 5.)  Plaintiff also separately requested an award of punitive damages.  (*Id.*, at 22, ¶ 7.)

Plaintiff served the Summons and Complaint on each of the Defendants on March 31, 2015 (*see* Dkt. 4 (proof of service); *see also* Greener Aff. ¶ 5), but neither Khan nor West Force timely moved, answered, or otherwise responded to the Complaint (*see generally* Dkt.).  Plaintiff therefore requested that the Clerk of Court enter default against them (Dkt. 7), and the Clerk of Court did so on June 9, 2015 (Dkt. 8 (Clerk's Certificate of Default)).  Plaintiff then filed a motion on July 29, 2015, seeking the issuance of a default judgment against each of these Defendants.  (Dkt. 12.)  Plaintiff served its motion on Defendants (Dkt. 13), but Defendants did not respond.

After the matter was referred to this Court for a report and recommendation, this Court issued a Scheduling Order, directing Plaintiff to serve and file Proposed Findings of Fact and Conclusions of Law concerning damages no later than November 13, 2015, and directing Defendants to file any opposition by December 14, 2015.  (Dkt. 15.)  This Court specifically cautioned Defendants that, if they failed to respond to Plaintiff's submission or request an in-court hearing by December 14, 2015, this Court would issue a Report and Recommendation concerning damages on the basis of Plaintiff's written submissions alone.  (*Id.*)  Plaintiff timely filed its Proposed Findings on November 13, 2015 (Dkt. 17), but Defendants did not respond or otherwise contact this Court.

---

another document.  In fact, it is this Court's understanding that Plaintiff has filed several similar suits in this Court alone, against other alleged infringers of the "RooR" or other marks, leading this Court to conclude that, at this point, much of Plaintiff's drafting is in the nature of boilerplate.

6

In its Proposed Findings, Plaintiff does not lay out the specific terms of the injunctive relief that it is seeking, nor does it itemize or support its requests for costs and attorneys' fees. (*See, e.g.*, Greener Aff. ¶ 26 (asking for $3,000 in costs from each defendant, without supplying any documentary support for this figure).)  Plaintiff does, however, specify the damages that it is now seeking from each of the two Defendants.  On this point, Plaintiff asks that an award of statutory damages be granted in its favor in the amount of $150,000 as against defendant Khan, and in the amount of $120,000 as against defendant West Force.  (Proposed Findings (Section re "Statutory Damages") ¶ 6; *see also* Greener Aff. ¶ 26.)  Plaintiff has calculated these proposed damages by selecting a base figure of $10,000, and multiplying it by the approximate number of RooR-branded glass pipes that its investigator reported observing in each defendant's store (*i.e.*, 15 water pipes in Khan's store, and 12 in West Force's store).  (*See* Proposed Findings (Section re "Statutory Damages") ¶ 6.)

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Default Judgment and Damages

"[D]efault is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). Although a "'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,'" it does not reach the issue of damages.  *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).  In conducting a damages inquest, the Court accepts as true all of the factual allegations of the complaint, except those relating to damages.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 64-65 (2d Cir. 1981).

A plaintiff must therefore substantiate a claim with evidence to prove the extent of damages.  *See Trehan v. Von Tarkanyi*, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986) (plaintiff must introduce evidence to prove damages suffered and the court will then determine whether the relief flows from the facts) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  The burden is on the plaintiff to "introduce sufficient evidence to establish the amount of damages with reasonable certainty," *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12cv01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *report and recommendation adopted*, 2013 WL 4505255 (Aug. 23, 2013), although the plaintiff is entitled to all reasonable inferences in its favor based upon the evidence submitted, *see U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Universal Servs., Inc.*, No. 11cv730 (CS), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (adopting report and recommendation).

Regardless of the submitted proofs, damages awarded upon a defendant's default "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  While the Second Circuit has not specifically addressed what might constitute damages that "differ in kind," courts in this jurisdiction have interpreted the Rule 54(c) requirement to turn on defendant's receipt of adequate notice of the scope of damages.  *See*, *e.g.*, *Gucci America, Inc. v. Gold Center Jewelry*, 997 F. Supp. 339, 404 (S.D.N.Y. 1998) ("The rationale for the rule, insofar as it applies to default judgments, 'is that default is tantamount to consent to the entry of judgment, but this consent is effective only to the extent that it was duly informed.'" (quoting 10 Moore's Federal Practice § 54.71, at 54-127 (3d ed. 1997))).

Where a defaulting defendant has not made any submission on a damages inquest, the Court must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages, *see Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111

(2d Cir. 1997), and the Court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs alone, *see, e.g., Garden City Boxing Club, Inc. v. Hernandez*, No. 04cv2081 (LAP) (DF), 2008 WL 4974583, at *4-5 (S.D.N.Y. Nov. 24, 2008) (determining the adequacy of plaintiff's damages claim based solely on its submitted proofs where defendant neither responded to plaintiff's submissions with respect to its claimed damages nor requested a hearing). While the Court may hold a hearing to assess the amount of damages that should be awarded on a default, *see* Fed. R. Civ. P. 55(b)(2) (court may conduct hearings on damages as necessary), the Second Circuit has consistently held that "[b]y its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court," *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *accord Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (judges are given much discretion to determine whether an inquest hearing need be held); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (Fed. R. Civ. P. 55(b)(2) "allows but does not require . . . a hearing").

**B.      Relief Available Under the Lanham Act**

The Lanham Act, 15 U.S.C. § 1051 *et seq*., provides that a plaintiff may obtain actual damages or – at the plaintiff's option – statutory damages for trademark infringement or counterfeiting, *see* 15 U.S.C. § 1117, and may also obtain injunctive relief, *see id*. § 1116(a). The statute also allows for the recovery of costs and, in certain cases, attorneys' fees. *See id.* § 1117(a); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012) (discussing when attorneys' fees are appropriately awarded in cases involving statutory damages).

The Lanham Act permits courts to award higher statutory damages in counterfeiting cases than in cases where the infringing mark at issue, while confusingly similar to the plaintiff's mark,

does not meet the definition of "counterfeit."  Under the statute, the use of a "counterfeit mark" is defined to mean either the unauthorized use of a federally registered trademark, *id.* § 1116(d)(1)(b)(i),  or the use of "a spurious designation that is identical with, or substantially indistinguishable from" a registered mark, *id.* § 1116(d)(1)(b)(ii).  Further, a defendant is considered to have engaged in counterfeiting when it uses "an original mark" of plaintiff's, in a manner "that is likely to deceive the public as to its origin.'"  *See Leviton Mfg. v. Fastmac Performance Upgrades, Inc.*, No.13cv01629 (LGS) (SN), 2014 WL 2653116 (S.D.N.Y. Feb. 28 2014) (citing *Cotton v. Slone*, 4 F.3d 176, 181 (2d. Cir. 1993) (quoting *Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 169 (S.D.N.Y. 2003)).

A defendant's knowledge that goods are branded with a counterfeit mark is not necessary for the defendant to be considered a counterfeiter under these definitions, although increased damages may be awarded for "willful" counterfeiting – *i.e.*, where the defendant acted with actual knowledge or reckless disregard of the counterfeiting.  *See Kepner-Trequoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) ("The standard for willfulness is whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." (internal quotation marks and citations omitted)).  Further, when determining damages pursuant to the Lanham Act, "many courts in [the Second Circuit] treat a default as evidence of willfulness."  *Rolls-Royce PLC v. Rolls-Royce USA, Inc.,* 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010) (collecting cases); *see also Tiffany (NJ) LLC*, *v. Dong*, No. 11cv2183 (GBD) (FM), 2013 WL 4046380, at *5 (S.D.N.Y. Aug. 9, 2013) (report and recommendation) (finding that "by virtue of their default, [defendants] have admitted that they acted knowingly and intentionally, or at least with a reckless disregard for, or willful blindness to, [plaintiff's] rights"),

10

*recommended damages incorporated in* Default Judgment (Dkt. 48, in Case No. 11cv2183

(GBD) (Oct. 27, 2014)).

    The provision of the Lanham Act that allows for statutory damages for counterfeiting

provides as follows:

> In a case involving the use of a counterfeit mark (as defined in
> section 1116(d) of this title) in connection with the sale, offering
> for sale, or distribution of goods or services, the plaintiff may elect,
> at any time before final judgment is rendered by the trial court, to
> recover, instead of actual damages and profits under subsection (a)
> of this section, an award of statutory damages for any such use in
> connection with the sale, offering for sale, or distribution of goods
> or services in the amount of –
>
> (1)    not less than $1,000 or more than $200,000 per counterfeit
> mark per type of goods or services sold, offered for sale, or
> distributed, as the court considers just; or
>
> (2)    if the court finds that the use of the counterfeit mark was
> willful, not more than $2,000,000 per counterfeit mark per
> type of goods or services sold, offered for sale, or
> distributed, as the court considers just.

15 U.S.C. § 1117(c).[6]

    Section 1117(c) supplements Sections 1117(a)-(b), which provide for compensatory and

punitive damages that are explicitly tied to and limited by the actual profits generated or

damages caused by the illegal activity.  *See Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp.

2d 161, 165 (S.D.N.Y. 1999).  Specifically, Section 1117(a) instructs courts to award damages

equal to the defendant's profits, any damages sustained by the plaintiff, and the costs of the

---

[6] This statutory-damages provision of the Lanham Act was created by the
Anticounterfeiting Protection Act of 1996, Pub. L. 104-153, and was later amended by the
Prioritizing Resources and Organization for Intellectual Property Act of 2008, Pub. L. 110-403
(increasing maximum damages allowable under § 1117(c)(2) from $1 million to $2 million).

action.  Section 1117(b) then directs courts to treble those damages where the defendant's

conduct was willful.  Congress added Section 1117(c) in 1996 (*see supra*, at n.6), in recognition

of the fact that trademark counterfeiters frequently do not keep and sometimes purposely destroy

sales records, making a determination of actual damages difficult, if not impossible.  *See Guess?,*

*Inc. v. Gold Center Jewelry*, 997 F. Supp. 409, 411 (S.D.N.Y. 1998) (citing S. Rep. No. 177,

104th Cong., 2d Sess. (1995)).  Neither Section 1117(c)(1) nor 1117(c)(2) provides any specific

criteria for determining the amount of statutory damages that may be awarded, but, instead, each

section simply authorizes such awards "as the court considers just," thereby affording the courts

"broad discretion" to determine the amount of damages appropriate to achieve the Lanham Act's

dual goals of compensation and deterrence.  *See Sara Lee*, 36 F. Supp. at 166.

To achieve the goals of compensation and deterrence when the defendant's profits and the

plaintiff's losses are difficult to determine directly, courts in this Circuit have identified seven

relevant factors, borrowed from copyright law, to consider in assessing trademark damages:

> (1) 'the expenses saved and the profits reaped' by the defendant
> infringer; (2) 'the revenues lost by the plaintiff'; (3) 'the value of
> the copyright'; (4) 'the deterrent effect on others besides the
> defendant'; (5) 'whether the defendant's conduct was innocent or
> willful'; (6) 'whether a defendant has cooperated in providing
> particular records from which to assess the value of the infringing
> material produced'; and (7) 'the potential for discouraging the
> defendant.'

*Coach, Inc. v. O'Brien*, No. 10cv6071 (JPO) (JLC), 2012 WL 1255276, at *2 (S.D.N.Y. Apr. 13,

2012) (adopting report and recommendation in part and quoting *Fitzgerald Pub. Co., Inc. v.*

*Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986)); *Sara Lee*, 36 F. Supp. at 166.  These

factors may bear upon one another.  Where, for example, a defendant's refusal to cooperate in

discovery creates uncertainties regarding the size of its counterfeiting operation, it may be

appropriate to resolve such uncertainties against the defendant.  *See Sara Lee*, 36 F. Supp. at 170.

12

Similarly, where a defendant has engaged in willful misconduct, increased damages may be necessary to deter that defendant from future misconduct.  *See id*.; *see also, e.g.*, *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09cv4810 (RRM) (ALC), 2011 WL 1131401, at *5 (E.D.N.Y. Mar. 11, 2011) ("Where 'a defendant is shown to have acted willfully, a statutory damages award should incorporate . . . a punitive component to discourage further wrongdoing by defendants and others.'" (quoting *Rolex Watch, U.S.A., Inc. v. Jones*, No. 99cv2359 (DLC) (FM), 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002)), *report and recommendation adopted*, 2011 WL 1130457 (Mar. 28, 2011).

Ultimately, the Court must, in its discretion, award damages that are sufficient to compensate the plaintiff and deter further unlawful activity by the defendant and others, without affording the plaintiff an unjustified windfall.  *See, e.g. Coach, Inc.*, 2012 WL 1255276, at *2 (reducing the plaintiff's requested damages from $3,000,000 ($1,000,000 per each of three infringed marks) to $249,000 ($83,000 per infringed mark), and noting that, while a defaulting defendant should "not be able to unilaterally limit a damages award," nor should "a plaintiff . . . reap a windfall multi-million dollar award from the actions of a single small-scale infringer"); *see also All-Star Marketing Group, LLC v. Media Brands Co., Ltd.,* 775 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2011) (collecting cases where Courts have issued awards ranging from $25,000 to $250,000 per infringed mark, "where the defendant willfully infringe[d] on the plaintiff's mark and fail[ed] to stop such behavior after being put on notice by the plaintiff or the court, but where there is no concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue").

Further, "[a]lthough statutory damages need not match actual damages, courts generally hold that 'statutory damages should bear some relation to actual damages suffered.'"  *Coach,*

13

*Inc.*, 2012 WL 1255276, at *2 (quoting *Yurman Studio, Inc. v. Castaneda,* Nos. 07cv1241, 07cv7862, 2008 WL 4949775, at *2 (S.D.N.Y. Nov. 19, 2008)); *see also New Line Cinema Corp. v. Russ Berrie & Co.,* 161 F. Supp. 2d 293, 303 (S.D.N.Y. 2001) ("[S]tatutory damages should be commensurate with the actual damages incurred and, thus, the proper departure point is [defendant's] stipulated gross revenue."); *Sara Lee,* 36 F. Supp. at 166-67 (stating that when calculating statutory damages, "actual damages, such as profits and losses, are a typical starting point for analysis").

## II.   PLAINTIFF'S REQUEST FOR A DEFAULT JUDGMENT

Plaintiff's Complaint plausibly alleges that Plaintiff is the exclusive licensee of the registered RooR trademarks in the United States, and that, pursuant to its license agreement with RooR, Plaintiff has the right to prosecute actions against U.S. infringers and counterfeiters of those trademarks.  (Compl. ¶¶ 12, 16.)  These allegations, accepted as true, constitute *prima facie* evidence that Plaintiff has valid marks that are entitled to Lanham Act protection.  *See Leviton Mtg. Co.*, 2014 2653116, at *4; *see also Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008).

The Complaint also adequately alleges that, without Plaintiff's consent or authorization, Defendants both offered for sale, and sold, products branded with a "RooR" word mark and/or logo that was either registered, or that was identical to, or substantially indistinguishable from, a registered "RooR" trademark – *i.e.*, a "counterfeit" mark.  (*See id.* ¶¶ 13, 19-20, 23-24.)  In this regard, this Court does note that the filed copy of the photograph of the water pipe purchased by the investigator from defendant West Force (*id.*, Ex. C (photograph of purchased item)) is not clear enough to show the registered RooR mark – or indeed, any markings at all (*see id.*). Nonetheless, the investigator stated, in the report attached to the Complaint, that the purchased

14

water pipe had "the RooR logo visible in clear glass on the chamber of the pipe," and this statement, in combination with Plaintiff's allegations that the RooR logos are registered (*id.* ¶ 13) and West Force's default, is sufficient to establish counterfeiting.

Based on Plaintiff's well-pleaded allegations, it is entitled to a default judgment against Defendants, awarding Plaintiff both damages and injunctive relief.  Given Defendants' default, Plaintiff would also be entitled to recover the reasonable costs it incurred in connection with this action, and potentially its attorneys' fees as well, but only upon a sufficient showing of those costs and fees.

### A.    <u>Statutory Damages</u>

As noted above, Plaintiff has elected to seek statutory damages in lieu of actual damages. *See, e.g.*, *Tiffany (NJ)*, 2013 WL 4046380, at *4 (report and recommendation noting that a trademark owner may choose to recover either actual or statutory damages).  In particular, Plaintiff is asking that the Court award it $150,000 in statutory damages against Khan, and $120,000 in statutory damages against West Force – amounts equal to $10,000 for every allegedly counterfeit RooR water pipe that Plaintiff's investigator observed in each of the two Defendants' stores (15 such pipes in Khan's store, and 12 in West Force's store).  (*See* Proposed Findings (Section re "Statutory Damages") ¶ 6.)  According to Plaintiff, these amounts would constitute appropriate awards in light of the factors relevant to a statutory-damages analysis, particularly Defendants' lack of cooperation, their willfulness in selling products that, according to Plaintiff, they must have known were counterfeit, and the need to deter other counterfeiters in the market.  (*Id.* ¶ 7.)

As a threshold matter, the Court must consider whether the damages requested by Plaintiff upon Defendants' default "differ in kind from, or exceed in amount, what is demanded

in the pleadings." Fed. R. Civ. P. 54(c).  In this regard, this Court notes that Plaintiff's pleading is, at a minimum, inartful.  The "Wherefore" clause of the Complaint, as quoted above (*see* Background, *supra*, at Section B), conflates two different concepts and statutory provisions, in specifying the damages sought.  In particular, the Complaint appears to seek treble actual damages (*see* Compl., at 21, ¶ 5 (requesting that Defendants "account for and pay over to Plaintiff profits realized by Defendant[s] by reason of Defendant[s'] unlawful acts" and that this amount "be increased by a sum of treble damages under 15 U.S.C. §§ 1117(b)")), and, in the alternative, statutory damages (*see id*. (adding "and/or up to $2,000,000 per Defendants under the [Anticounterfeiting Protection Act])).") Confusingly, though, Plaintiff added to the end of this request, after the reference to "up to $2,000,000 per Defendants" in statutory damages, the language "not exceeding three times the amount thereof as provided by law."  (*Id*.)  As discussed above, whereas the Lanham Act allows for trebling of *actual* damages under Section 1117(b), it does not allow for trebling of *statutory* damages, awarded under Section 1117(c).  (*See* Discussion *supra*, at Section I(B).)  Nonetheless, given the Complaint's reference to statutory damages "up to $2,000,000 per Defendants," this Court concludes that the damages now sought by Plaintiff on this inquest neither "differ in kind," nor "exceed in amount," the damages that Defendants would have fairly understood were being sought in the Complaint.

This Court further notes, however, that, on its face, the Lanham Act does not suggest that statutory damages may be calculated as Plaintiff would calculate them here, based on setting a base amount, and then multiplying that amount by the number of each falsely branded *item* found to have been sold or offered for sale by a defendant.  Rather, the statute, as quoted above, states that statutory damages may be awarded in the range of $1,000 to $200,000 (and, where the

counterfeiting was "willful," up to $2 million) "*per counterfeit mark per type of goods* or services sold, offered for sale, or distributed."  15 U.S.C. § 1117(c).

In this case, Plaintiff has not demonstrated that either Khan or West Force sold water pipes that were branded with more than one of the RooR trademarks at issue.  Indeed, as noted above, although Plaintiff's investigator has stated that each of the water pipes he purchased from Defendants bore a RooR logo, only one of those reports contains a photograph that, in the copy submitted to the Court, is even clear enough to show the logo in question.  (*See* Compl., Exs. A, C (attached photographs).)  Certainly, this Court has no basis for finding that more than one RooR trademark was used by either defendant.  Plaintiff has also not put forth evidence sufficient to show that either defendant was offering for sale more than one type of counterfeit RooR smoking product.  To the contrary, Plaintiff has, at best, demonstrated that one counterfeit trademark was used by each defendant on *one* "type of goods" – *i.e.*, water pipes.  Although the investigator's reports suggest that Defendants may have sold counterfeit RooR water pipes in different styles and/or colors (*see* Compl., Exs. A, C), this Court is unable to conclude, from the information provided, the number of such variations, or whether they should somehow be considered different "types" of goods, or whether different RooR marks were used on any of the variations.  Thus, this Court must evaluate the relevant factors and case law to determine a reasonable amount of statutory damages to be awarded against each defendant, based on the use of a single RooR trademark, on a single type of goods.

First, this Court notes that, "by virtue of their default," Defendants "are deemed to be willful infringers."  *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *3 (S.D.N.Y. Dec. 3, 2013), *report and recommendation adopted*, 2014 WL 1338065 (Apr. 3, 2014) (collecting cases).  Thus, although the allegations in Plaintiff's

Compliant regarding the knowing or reckless nature of Defendants' conduct are largely conclusory,[7] an award of statutory damages under Section 1117(c)(2) would nonetheless be appropriate in this case.  *See id.*

Accordingly, this Court turns to the various factors set out above (*see supra*, at Section I(B)), to determine a reasonable statutory-damages award.  As to the first three factors – the profits reaped by Defendants due to their counterfeiting, the revenues lost by Plaintiff, and the value of the trademarks at issue – the Court notes that Plaintiff has touted, in its Complaint, the supposed high value of the RooR trademarks, and the great extent of Defendants' supposed gain, at Plaintiff's expense.  For example, Plaintiff alleges that:

> It is exactly because of the higher sale value of RooR branded produces that RooR products are targets of counterfeiters.  These unscrupulous entities tarnish the RooR brand by unlawfuly affixing the RooR Marks to substantially inferior products, leading to significant illegitimate profits.  In essence, Defendants, and each of them, mislead consumers to pay premium prices for low grade products that free rides on the RooR brand, and in turn, Defendants reap substantial ill-gotten profits.

(Compl. ¶ 15.)   Although it is difficult, due to Defendants' default, to evaluate whether these allegations are well founded, the Court observes that the details of Plaintiff's investigator's reports suggest that Defendants may not have highlighted the "premium" quality of RooR merchandise in their stores, thereby obtaining premium prices, and that they may not have reaped significant profits at Plaintiff's expense.

At least with respect to defendant West Force, the Court notes that, as best as it can discern from the photographs annexed to the investigator's report (Compl., Ex. C), it appears that

---

[7] *See, e.g.*, Compl. ¶ 38 (alleging that "[e]ach of the Defendants' actions complained of herein were intentional, willful, and malicious with a deliberate intent to trade on the goodwill associated with the federally registered RooR Marks"); *see also* Proposed Findings § III, ¶ 4 (reciting the same).

the water pipes at issue may have been jumbled in bins, amidst a large quantity of similar merchandise, rather than being highlighted as purportedly superior products, commanding higher market prices (*see id.*).  Certainly, the prices paid by the investigator ($32.66 to Khan and $13.00 to West Force) are not, without greater context, suggestive of the fact that these Defendants were setting themselves up to earn "*significant* illegitimate profits" or "*substantial* ill-gotten gains" from the deliberate counterfeiting of Plaintiff's trademarks.  (Compl. ¶ 15 (emphases added).) Assuming the remainder of the counterfeit RooR water pipes observed by the investigator were similarly priced, then, even if Defendants had sold *all* of the counterfeit RooR merchandise that they had on display, Khan would have made less than $490 ($32.66 x 15) in profit, and West Force would have made less than $156 ($13 x 12).  These low figures exert some downward pressure on the amount of statutory damages that should be awarded here.

Each of the remaining factors, however – including the willfulness of Defendants' conduct, Defendants' lack of cooperation in providing discovery, and the potential for discouraging the Defendant and others – weighs in favor of granting Plaintiff an award that would be higher than Plaintiff's actual damages.  Moreover, courts in this District regularly find that "a significant award [is] necessary to deter the defendant and others from infringing the marks."  *Coach, Inc.*, 2012 WL 1255276, at *2; *see also Lane Crawford LLC*, 2013 WL 6481354, at *3 ("As to the fourth factor, the goal of deterring similar conduct by other enterprises requires a substantial award." (internal quotation marks and citations omitted, collecting cases)).  Even so, as noted above, Plaintiff "should not reap a windfall multi-million dollar award from the actions of a single small-scale infringer," *Coach, Inc*. 2012 WL 1255276, at *2, and, the statutory damages awarded should "bear some relation to actual damages suffered" *id*. (quoting *Yurman Studio, Inc.*, 2008 WL 4949775, at *2).

19

Having considered and balanced all of the relevant factors, this Court recommends awarding Plaintiff damages in the amount of $50,000 as against each Defendant, an amount that far exceeds the profits that Defendants apparently reaped, but which acknowledges Defendants' willful conduct and the importance of deterring potential future infringers.  *See id.* (awarding $83,000 per infringing mark, even where it appeared the defendant's profit was $5,533.76); *see also All-Star Mktg. Grp., LLC*, 775 F. Supp. 2d 613, 625 (S.D.N.Y. 2011) (adopting report and recommendation, awarding plaintiffs between $25,000 and $50,000 per mark for various infringed marks, and noting that, "even without any information as to defendants' earnings or plaintiffs' losses, an award of statutory damages of $25,000-50,000 per infringed mark 'will impress upon [defendants] that there are consequences for [their] misconduct . . . [and] will serve as a specific deterrent to [defendants] and as a general deterrent to others who might contemplate engaging in infringing behavior in the future.'" (quoting *Kenneth Jay Lane Inc. v. Heavenly Apparel, Inc.,* No. 03cv2132 (GBD) (KNF), 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) (adopting report and recommendation))); *Church & Dwight Co. v. Kaloti Enters. of Michigan, L.L.C.,* 697 F. Supp. 2d 287, 295 (E.D.N.Y. 2009) (awarding $50,000 per infringing mark, where defendants did not "traffic[ ] in large-scale quantities of counterfeit" goods, and finding such an award "sufficient to both compensate plaintiff for its losses and to deter [defendant] from violating plaintiff's trademarks again").

Accordingly, I recommend that judgment be entered against Defendants in the total amount of $100,000 ($50,000 as against Khan and $50,000 as against West Force), representing an amount that this Court "considers just."  15 § U.S.C. 1117(c).

B.    **Injunctive Relief**

Perhaps because this matter was referred to this Court for a "damages" inquest, Plaintiff's Proposed Findings do not contain any mention of injunctive relief, although counsel's supporting Declaration does state that "Plaintiff seeks a Permeant [sic] Injunction in accordance with F.R.C.P. Rule 65 stopping each Defendant from selling fake RooR products in the future." (Greener Decl. ¶ 26.)  Similarly, Plaintiff's motion for a default judgment requests the entry of an injunction (Dkt. 12), as does Plaintiff's Complaint (Compl., at 19 ¶ 1)).  As Plaintiff's allegations are sufficient to entitle it to injunctive relief as against both Defendants under 15 U.S.C. § 1116(a), I recommend that injunctive relief be included in any judgment issued in Plaintiff's favor against them.  I further recommend that Plaintiff be directed to submit, for the Court's consideration, a proposed Judgment that, in addition to awarding Plaintiff statutory damages, would enjoin Defendants from using any of the RooR word marks or logos, or any confusingly similar marks, on any products that Defendants may sell or offer for sale in the future.

C.    **Costs**

15 U.S.C. § 1117(a) provides that a plaintiff who establishes trademark infringement may recover the costs that it incurred in the action.  Costs that may be appropriate for reimbursement include filing fees, process-server fees, copying costs, and other administrative costs.  *Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987).

In this case, Plaintiff is apparently seeking recovery from Defendants of only two types of costs:  the costs of (1) service of process upon Defendants, and (2) hiring an investigator to investigate the merchandise Defendants were selling in their stores.  Specifically, Plaintiff's counsel states that Plaintiff should be awarded "the costs of is [sic] investigators and service of process for a total and [sic] extra $3,000 per defendant."  (Greener Aff. ¶ 26; *see also* Proposed

21

Findings (Section re "Statutory Damages") ¶ 6 (making the identical statement).)  Plaintiff, however, has not submitted *any* documentation of either of the claimed costs.  Absent the production of any invoices or other documents to support these costs, this Court has no basis to assess whether $3,000 was actually incurred by Plaintiff in connection with conducting a brief investigation of, and then serving process on, Khan.  Nor can the Court ascertain whether a like amount was incurred with respect to the investigation of, and service of process on, West Force.

Moreover, this Court has some real skepticism as to whether such amounts were – or reasonably should have been – incurred with respect to the separate investigation of, and service of process on, each defendant, given that West Force's store was reportedly located at 2 St. Mark's Place, and Khan's store was reportedly located at 3 St. Mark's Place, directly across the street.  For that matter, Kulture, the third defendant originally named in this case (*see supra*, at n.1) was reportedly located at 12-23 St. Mark's Place, just down the block from the other two (*see* Compl., Ex. B (investigator's report regarding Kulture)).  It is difficult to believe that an investigator (identified as James Orfanos) and a process server (identified as Theodoros Ofanos), both apparently with the same investigative firm, could have reasonably charged Plaintiff $9,000 for visiting each of these three stores on a single day; making a single purchase at each; writing up a one-page report on each, with a few attached photographs; and then serving process on each defendant by personal service at these same store locations.

Based on both the lack of documentation submitted to support Plaintiff's request for costs, and the fact that the requested costs, on their face, appear unreasonable, I recommend that the requested costs be denied.

D.   **Attorneys' Fees**

Where a plaintiff is awarded actual damages in a counterfeiting case, 15 U.S.C. § 1117(b) provides that the court "shall" enter a judgment for "a reasonable attorney's fee."  Attorneys' fees are also available where the court awards statutory damages under Section 1117(c), provided the court finds the case to be "exceptional," as where there is evidence or fraud or bad faith, or where the defendant is found to have acted willfully.  *See Louis Vuitton Malletier S.A.*, 676 F.3d at 111.

Here, given Defendants' default – which, as discussed above, leads this Court to conclude that they have acted willfully (*see* Discussion *supra*, at Section I(B)) – an award of attorneys' fees would be appropriate.  Even so, this Court has no basis for recommending an award of fees at this time.  Generally, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and must provide the Court with sufficient information to assess the fee application, *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  At this point, Plaintiff has done *nothing* to satisfy this burden, as it has not even indicated the amount of fees that it is seeking, much less provided its rates or hours, as would be necessary for the Court to assess the reasonableness of those fees.

This Court notes, however, that (as with respect to its request for injunctive relief) Plaintiff may have been under the impression that the reference to this Court for a damages inquest meant that only its claimed damages would be under consideration at this time.  Given

this possibility, and so as not to unfairly deprive Plaintiff of attorneys' fees to which it would otherwise be entitled, I recommend that, while no fees be awarded at this juncture, Plaintiff be given an opportunity to submit a separate fee application.

## CONCLUSION

For all the reasons stated above, this Court recommends that Plaintiff's motion for a default judgment (Dkt. 12) be granted, and that, on the default judgment, Plaintiff be awarded statutory damages against defendant Khan in the amount of $50,000 and statutory damages against defendant West Force in the amount of  $50,000.

I further recommend that Plaintiff be directed to submit a proposed judgment containing (1) both of these damages amounts and (2) language for a proposed permanent injunction that would enjoin each of the two Defendants from engaging in any further sales, or continuing to offer for sale, any products bearing marks or logos that infringe or constitute counterfeits of Plaintiff's RooR trademarks.

Finally, for the reasons discussed above, I recommend that Plaintiff's requests for costs be denied, but that it be afforded an opportunity to submit a separate application for attorneys' fees.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, United States Courthouse, 500 Pearl Street, Room 1910, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York

10007.  Any requests for an extension of time for filing objections must be directed to

Judge Wood.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL

RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.

*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d

1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.*

*Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d

Cir. 1983).

Dated:  New York, New York
        February 23, 2016

                                            Respectfully submitted,


                                            DEBRA FREEMAN
                                            United States Magistrate Judge

Copies to:

Hon. Kimba M. Wood, U.S.D.J.

Plaintiff's counsel (via ECF)

Khan Gift Shop, Inc.
a/k/a Khan and Khan Gift Shop
1 Saint Marks Place
New York, NY 10003

West Force USA INC.
a/k/a Tattoo and Body Piercing Studio
2 Saint Marks Place
New York, NY 10003